IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| SCOTT JENSEN,<br><br>          Plaintiff,<br><br>vs.<br><br>BLACK HILLS TRUCKING, INC., a foreign corporation; HALLIBURTON ENERGY SERVICES, INC., a foreign corporation,<br><br>          Defendants. | CV-06-41-BLG-RFC-CSO<br><br><br>**ORDER and**<br>**FINDINGS AND**<br>**RECOMMENDATIONS OF**<br>**UNITED STATES**<br>**MAGISTRATE JUDGE** |

Plaintiff Scott Jensen ("Jensen") initiated this action against Defendants Black Hills Trucking, Inc. ("Black Hills") and Halliburton Energy Services, Inc. ("Halliburton") after he fell from a drilling rig and was injured. *Cmplt*. (*Court's Doc. No. 1*) *at 2-6*. Invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332, Jensen alleges that Black Hills and Halliburton were negligent at the drilling rig site and that their negligence caused his fall and injuries. *Id*.

In an Order (*Court's Doc. No. 132*) filed November 13, 2008, Chief Judge Cebull, to whom this case is assigned, acknowledged receipt of notice that Jensen

1

and Halliburton have resolved the claims between them.  Thus, only Black Hills

remains as a defendant.

Pending before the Court are:

(1)    Jensen's Motion for Partial Summary Judgment (*Court's Doc. No. 83*) on
       Black Hills' third, fourth, fifth, and seventh affirmative defenses;

(2)    Black Hills' Motion for Leave to File Response to Supplemental Authority
       in Support of Jensen's Motion for Partial Summary Judgment (*Court's Doc.
       No. 134*);

(3)    Black Hills' Motion for Summary Judgment (*Court's Doc. No. 102*); and

(4)    Black Hills' Motion to Amend Answer to Add a § 27-1-703 Defense
       (*Court's Doc. No. 137*).

Having reviewed the record, together with the parties' arguments in support

of their respective positions, the Court issues this Order and Findings and

Recommendations.

## I.    *BACKGROUND*

On March 12, 2005, Jensen was employed by Nabors Drilling USA, LP

("Nabors Drilling") at a drilling site in Richland County, Montana.  Halliburton

was the site's lead contractor and operator.  *Jensen's Statement of Undisputed*

*Fact* (Court's Doc. No. 82) ("*Jensen's SUF*") *at ¶¶ 1-3*.  Halliburton contracted

with Nabors Drilling to drill the well.  *Id. at ¶¶ 3-4*.  Halliburton contracted with

Black Hills to "rig down," "transport," and "rig up" Nabors Drilling's rig.  *Id. at*

*¶¶ 5-7.*

When the accident occurred, Nabors Drilling employees and Black Hills employees were working to "rig up" or assemble Drilling Rig No. 49.  *Id. at ¶ 8.* This process included installation of winterizing panels on the rig floor approximately 20 feet above the ground.  *Black Hills' Statement of Genuine Issues* (Court's Doc. No. 101) ("*Black Hills' SGI*") *at ¶ 4.*  The panels are designed to protect rig workers from the weather.  *Black Hills' Preliminary Pretrial Statement* (Court's Doc. No. 14) *at 2.*

Black Hills used a crane to lift winterizing panels from the ground to the rig floor.  *Jensen's SUF at ¶ 19*; *Black Hills' SGI at ¶ 4.*  Once the winterizing panel is lifted into place, workers on the rig floor are supposed to secure it to the rig floor and pin it to the "dog house," which is a large shed that sits on the rig floor. *Black Hills' SGI at ¶ 4.*  Once the panel is securely attached to the rig, the crane is to be unhooked from the winterizing panel.  *Black Hills' SGI at ¶ 5.*

When the accident occurred, Black Hills had no employees on the rig floor. Nabors drilling had at least five employees on the rig floor, including three rig hands (Jensen, Mr. Viall, and Mr. Bartels) and two supervisors (Mr. Slaeen and Mr. Simonson).  *Black Hills' SGI at ¶ 6.*

At the time of the accident, Black Hills had lifted the winterizing panel to

the rig floor.  The panel was secured to the rig floor, but had not been pinned to the dog house.  *Black Hills' SGI at ¶ 16*; *Jensen's Mem. in Support of Mtn. for Partial Summary Judgment* (*Court's Doc. No. 84*) ("*Jensen's Opening Br.*") *at 6*. Nevertheless, the crane either released the panel or was unhooked from the panel. The wind was blowing at the time.  The winterizing panel, apparently pushed by the wind,  lifted and pulled up the floor plate to which it was attached.  *Black Hills' SGI at ¶ 21*.  Jensen was standing on the floor plate and was injured when he fell from the rig floor.  *Jensen's SUF at ¶ 1*.

## II.   *SUMMARY JUDGMENT STANDARD OF REVIEW*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

4

*Cattrett,* 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

### III. <u>DISCUSSION</u>

#### A. <u>*Black Hills' Summary Judgment Motion*</u>

Black Hills advances three principal arguments in support of its motion for summary judgment.  First, it argues that it owed no duty to assemble or to supervise the assembly of Nabors Drilling's rig or to ensure that Nabors Drilling's rig hands did their jobs properly in assembling the rig.  *Black Hill's Brief in Support of its Motion for Summary Judgment* (Court's Doc. No. 103) ("*Black Hill's Opening Br.*") *at 8-12*.  It argues that Nabors Drilling "had complete control

of the elevated rig floor and Black Hills undertook no duty to assemble the rig." *Id. at 9*. Black Hills also argues that Nabors Drilling employees "intentionally unhooked the Black Hills' crane and then signaled to Black Hills to move the crane away." *Id. at 11*. Because Black Hills owed no duty to assemble the rig or to supervise Nabors Drilling's employees' assembly of the rig, Black Hills argues, Jensen's case against it fails as a matter of law. *Id. at 11-12*.

Second, Black Hills argues that it did not cause the accident. *Id. at 12-13*. It argues that one of Jensen's own retained expert has rendered the opinion that "Nabors had control of placing, pinning and securing the winterizing panel and that the 'primary cause' of this accident was the premature unhooking of the panel." *Id. at 12*. Black Hills also argues that "[t]he jury will hear testimony from all parties that Black Hills' conduct was not the primary cause of this accident[,] and that a "jury will have no choice but to find in favor of Black Hills." *Id. at 13*.

Third, Black Hills argues that it is undisputed that Jensen was not wearing a safety harness at the time of the accident and that, because of this, Jensen's own retained expert has testified that Jensen was more than 50 percent at fault for his fall. Under Montana law, Black Hills argues, a plaintiff found more than 50 percent at fault for his injury cannot recover any damages. *Id. at 14*. Because Jensen was more than 50 percent at fault and thus cannot recover any damages,

Black Hills argues, summary judgment against him is appropriate. *Id. at 14-15*.

In response, Jensen argues that summary judgment is inappropriate. He argues that: (1) Black Hills had a duty not only to its own employees but also to Jensen and other Nabors Drilling employees to provide a safe work place under Montana law, *Pltf's Response to Black Hill's Summary Judgment Mtn.* (Court's Doc. No. 114) ("*Jensen's Resp.*") *at 2-3, 15-17*; (2) Black Hills caused the accident when it deviated from its own practices and industry standards by, among other things, not having properly trained and enough workers on the scene to assist the crane operator and by operating the crane in high winds, *id. at 4, 17-19*; (3) issues of material fact exist with respect to how the crane became prematurely unhooked from the winterizing panel that preclude summary judgment, *id. at 4-5*; and (4) Jensen was not required to wear a harness or other fall protection because he was working in a protected area and not on an exposed edge of the platform, *id. at 5, 19-20*.

Having considered the record and the parties' arguments, the Court concludes that summary judgment is inappropriate. As discussed below, Black Hills owed Jensen a duty of care at the work site. Also, genuine issues of material fact exist both with respect to causation and to whether Jensen's lack of fall protection precludes his recovery of any damages.

7

The Montana Supreme Court recently discussed negligence and its elements

in the context of a summary judgment motion as follows:

> Negligence is the failure to use the degree of care that an ordinarily
> prudent person would have used under the same circumstances.  To
> maintain an action in negligence, the plaintiff must prove four
> essential elements: (1) the defendant owed the plaintiff a legal duty,
> (2) the defendant breached that duty, (3) the breach was the actual
> and proximate cause of an injury to the plaintiff, and (4) damages
> resulted.  As noted, actionable negligence arises only from the breach
> of a legal duty. Therefore, in order for there to be a genuine issue of
> material fact in a negligence case, there must be a duty imposed on
> the defendant and allegations which, if proven, would support a
> finding of a breach of the duty.  Furthermore, although negligence
> actions ordinarily involve factual issues which make summary
> judgment inappropriate, if the plaintiff fails to offer proof on any one
> of the four elements of negligence, then summary judgment in favor
> of the defendant is proper.

*Peterson v. Eichhorn*, 189 P.3d 615, 620-21 (Mont. 2008) (citations omitted).

With respect to whether Black Hills owed Jensen a duty, "[t]he existence of

a legal duty and the scope of any duty are questions of law."  *Fabich v. PPL*

*Montana, LLC*, 170 P.3d 943, 947 (Mont. 2007) (citing *Dukes v. City of Missoula*,

119 P.3d 61, ¶ 11 (Mont. 2005)).  "At the most basic level, we all share the

common law duty to exercise the level of care that a reasonable and prudent

person would under the same circumstances."  *Fisher v. Swift Transportation Co.,*

*Inc.*, 181 P.3d 601, 606  (Mont. 2008) (citations omitted).  The common law may

impose additional, special duties when a relationship exists, and statutes may

impose heightened duties.  *Id*. at 606-07 (providing examples; citations omitted).

"In analyzing whether a duty exists, [courts] consider whether the imposition of

that duty comports with public policy, and whether the defendant could have

foreseen that his conduct could have resulted in an injury to the plaintiff."  *Id*. at

607 (citation omitted).

Black Hills argues that it had no legal duty to Jensen because Nabors

Drilling employees actually unhooked the crane from the winterizing panel before

it was properly pinned in place.  *Black Hills' Opening Br. at 2*.  It argues that,

because it owed no legal duty to ensure that Nabors Drilling employees followed

their own rig-assembly procedures and properly pinned the panel, it is entitled to

summary judgment.  *Id*.

The Court concludes that Black Hills' argument fails.  Black Hills confuses

duty with causation.  Montana law provides the general standard to measure

negligence or due care as follows:

> Except as otherwise provided by law, everyone is responsible not
> only for the results of his willful acts but also for an injury occasioned
> to another by his want of ordinary care or skill in the management of
> his property or person, except so far as the latter has willfully or by
> want of ordinary care brought the injury upon himself.

§ 27-1-701, MCA.

With respect to the particular duties Jensen believes Black Hills owed to

him, Jensen alleges that Black Hills had duties: (1) "to provide Jensen (and other similarly situated workers) with a safe place to work[,]" *Cmplt. at ¶ 8*; (2) "to adopt, institute and enforce safe procedures, methods and manners of work (including crane operation and rig assembly procedures)[,]" *id. at ¶ 11*; (3) "to provide adequate tools and equipment[,]" *id*.; (4) "to provide safe, sufficient and adequate in number supervisory employees and necessary human assistance for the proper and safe assembly[,]" *id*.; (5) "to enforce safe crane operating procedures in order to provide Jensen, and other similarly situated workers, with a safe working environment during the assembly of Nabors Drilling Rig # 49[,]" *id*.; and (6) "to properly train and supervise its employee, prior to, and throughout the assembly" of the drilling rig, *id*.

The general nature of most of these allegations are directed toward Black Hills' employees conducting the lifting and assisting in the attempted installation of the winterizing panel. No party disputes that Black Hills, among others, was involved in that process. Section 27-1-701, MCA, imposes upon Black Hills and other participants in the process a duty to act with ordinary care or skill, provided any harm or injury that occurred was foreseeable. *See, e.g., Fisher*, 181 P.3d at 607-08 ("Even if the only duty that [defendant] owed to [plaintiff] was the common law duty to exercise reasonable care, [plaintiff] would still be a

10

foreseeable plaintiff because he was within the zone of risk created by [defendant's] alleged negligence.").

The Montana Supreme Court has recognized that "existence of a duty 'turns primarily on foreseeability.'" *Fisher*, 181 P.3d at 607. The supreme court, in discussing foreseeability, has relied on the following explanation:

> The risk reasonably to be perceived defines the duty to be obeyed. That is to say, a defendant owes a duty with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent in the first instance.

*Id*. (citations omitted).

The Court concludes that the circumstances surrounding this accident make Jensen a foreseeable plaintiff. It is undisputed that the accident scene involved use of a crane in windy conditions, lifting a metal winterizing panel about 20 feet to a raised platform where workers standing on the platform were to attempt to secure it. One cannot reasonably dispute that the workers on the platform, including Jensen, were within a "foreseeable zone of risk" created by the situation. *Fisher*, 181 P.3d at 607 (*Prindel v. Ravalli County*, 133 P.3d 165, ¶ 38 (Mont. 2006)). Thus, Jensen was a foreseeable plaintiff, and Black Hills owed a legal duty to him.

The Court notes that, contrary to Black Hills' argument, this case is not about whether all those who participated in the attempted installation of the

11

winterizing panel owed a legal duty to one another to proceed with ordinary care or skill.  As discussed above, Montana law clearly imposes that duty under the circumstances.  Rather, the dispute here involves who and what caused that installation process to fail, which led to Jensen's injuries.  Because Black Hills owed Jensen a legal duty, summary judgment on this issue should be denied.

The Court also concludes that summary judgment is not appropriate because genuine issues of material fact exist about the cause of this accident.  For example, the parties have presented a great deal of conflicting evidence on: (1) whether windy conditions on the day of the accident were so severe that they should have prompted Black Hills to cease the attempt to install the winterizing panels; (2) whether Black Hills should have had, or was required to have, additional and appropriately trained workers on the drilling rig to assist the crane operator; and (3) how the winterizing panel came to be prematurely unhooked from the crane. These questions impact a determination of causation, and are appropriately left to the jury to decide.

Finally, the Court is not convinced that Black Hills is entitled to summary judgment because one of Jensen's retained experts stated that Jensen's failure to wear a safety harness or other fall protection rendered him more than 50 percent negligent.  "Whether a plaintiff was contributorily negligent is a question for the

fact-finder, unless reasonable minds could not draw different conclusions from the evidence." *Peterson*, 189 P.3d at 623 (citations omitted).

Although it is undisputed that Jensen was not wearing a safety harness or other fall protection, the parties have presented conflicting evidence about whether he needed to be wearing such a device under the circumstances.  For example, the parties have presented conflicting evidence about whether the edge off of which Jensen fell was exposed and the distance Jensen was standing from the edge when the rig floor moved.  The jury must resolve these genuine issues of material fact. Summary judgment is not appropriate.

### B.   *Jensen's Motion for Partial Summary Judgment*

Jensen seeks summary judgment on Black Hills' third, fourth, fifth, and seventh affirmative defenses. *Jensen's Opening Br. at 2*.  Black Hills initially represented that it "will voluntarily drop its third and seventh affirmative defenses" (*Black Hills' Response Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment* (*Court's Doc. No. 99*) ("*Black Hills' Resp.*") *at 2, n.1*), but has subsequently filed a motion to amend its answer and included these defenses.  Black Hills has not, however, presented any arguments to the Court in

defense of these two affirmative defenses.[1]  Thus, Jensen's motion should be

granted to the extent it seeks summary judgment on Black Hills' third and seventh

affirmative defenses.  Only Black Hills' fourth and fifth affirmative defenses

remain at issue with respect to this motion for partial summary judgment.

Black Hills' fourth affirmative defense provides:

> As a fourth affirmative defense to each cause of action in the
> Complaint, Black Hills alleges that Plaintiff's alleged injuries,
> damages or losses, if any, were directly and proximately caused by
> the intervening, superseding acts and conduct of others over which
> Black Hills had no control, thereby precluding any recovery against
> Black Hills.

*Defendant Black Hills Trucking, Inc.'s Answer and Jury Demand* (Court's Doc.

No. 5) ("*Black Hills' Answer*") *at ¶ 24.*

Black Hills' fifth affirmative defense provides:

> As a fifth affirmative defense to each cause of action in the
> Complaint, Black Hills alleges that Plaintiff's damages, if any, were
> caused by unforeseeable, intervening and independent factors
> unrelated to the actions of Black Hills or its agents.

*Id. at ¶ 25.*

Jensen argues that Black Hills' fourth and fifth affirmative defenses are

unavailable for two primary reasons.  First, Jensen argues that Montana law

_____

[1]Black Hills' proposed amended answer includes a Ninth Affirmative
Defense as to the non-party issue.  Its motion to file that amended answer is
addressed below.

precludes Black Hills from arguing that Nabors Drilling or any unidentified non-

parties were negligent, legally responsible, or otherwise at fault for Jensen's

damages. *Jensen's Opening Br. at 8-10*.  Jensen argues that Black Hills has failed

to identify in its responses to Jensen's discovery requests any non-parties who

might be liable for Jensen's injuries.  Also, Jensen argues that Nabors Drilling is

protected by the Montana Workers' Compensation Act's exclusivity provision and

is not subject to "any liability whatever" to Jensen except what is available under

the Act.  *Id. at 9*.

Second, Jensen argues that Black Hills cannot avoid liability by asserting

superseding or intervening cause.  He argues that Montana law does not allow

those defenses where Black Hills "set in motion events that resulted in the

injuries" to him.  *Id. at 10*.  He argues that Black Hills' crane crew

> chose to continue crane operations in dangerous wind conditions and
> the crane operator chose to take no special precautions given the
> circumstances of his lift.  He made no effort to identify and properly
> designate a trained signal man on the rig floor to work as the eyes of
> the crane operator.  The crane operator was unable to see the
> movement by untrained and unskilled workers away from him on the
> rig floor. ...  But for the conduct of crane operations under the windy
> conditions, the winterizing panel would not have been blown off Rig
> [No.] 49, propelling Jensen off the rig floor.

*Id. at 11*.

In response, Black Hills argues that Montana law allows consideration of an

15

immune party's actions or a non-party's actions in determining whether the conduct was a superseding, intervening cause of a plaintiff's damages.  *Black Hills' Resp. at 9-12*.  Second, Black Hills argues that overwhelming evidence proves that it did not cause the accident but that, even if it was negligent, intervening, superseding causation exists.  *Id. at 13-20*.  Because a jury could find from the evidence that Nabors Drilling's employees, including Jensen, failed to follow their training and procedures, Black Hills argues, fact issues exist with respect to causation that preclude summary judgment. *Id*.

The Court agrees with Black Hills that summary judgment with respect to Black Hills' fourth and fifth affirmative defenses is not appropriate.  Black Hills readily concedes that it "cannot apportion <u>fault</u> to Nabors," *Black Hills' Resp. at 10* (emphasis in original), because the Workers' Compensation Act's exclusivity provision renders Nabors Drilling presumptively immune from liability.  *Stewart v. Lewis*, CV 01-143-BLG-RWA (D. Mont., Order filed June 7, 2002) at 3 (citing *Reynolds v. United States*, 929 P.2d 844, 846 (Mont. 1996) and § 39-71-411, MCA) (attached as Ex. T to *Black Hills' SGI*).  It argues, however, that it may defend by asserting that an employer's actions were a superseding, intervening cause of the accident.  In *Stewart*, Judge Anderson ruled that an employer's or co-employee's immunity did not prohibit a defendant from raising a defense as to the

intervening, superceding cause of plaintiff's damages.  Jensen cites to no

controlling Montana case holding to the contrary.

The question remains, however, whether there is properly before the court

an issue of fact as to intervening causation.  Jensen cites to *Faulconbridge v. State*,

142 P.3d 777 (Mont. 2006), in which the Montana Supreme Court addressed the

issue of whether a defendant could introduce a non-party's conduct.  *Jensen's Rely*

*Br. (Court's Doc. No. 117) at 3.*  In *Faulconbridge,* the supreme court stated:

> We conclude, after revisiting *Pula* [v. State, 40 P.3d 364 (Mont.
> 2002)] and its subsequent application, that a defendant may introduce
> non-party conduct only for the purpose of demonstrating that the non-
> party conduct was a superseding intervening cause of plaintiff's
> damages.  By "superseding intervening cause" we mean "an
> unforeseeable event that occurs after the defendant's original act of
> negligence ... [which] will generally serve to cut off defendant's
> liability."  A defendant may not, however, introduce such non-party
> conduct in an attempt to merely diminish its own responsibility, for
> this would constitute an attempt to apportion fault to a non-party, in
> violation of *Plumb* [v. Fourth Jud. Dist. Court, Missoula County, 927
> P.2d 1011 (Mont. 1996)].

*Faulconbridge*, 142 P.3d at 792 (citation omitted).  More recently, in *Fisher v.*

*Swift Transportation Co, Inc.,* 342 Mont. 335, 181 P.3d 601 (2008), the court

explained:

> The issue of whether an intervening cause was foreseeable or not is a
> question of fact that is normally properly left to the fact-finder for
> resolution.  However, where reasonable minds may reach but one

conclusion, foreseeability may be determined as a matter of law for summary judgment purposes.

*Id.* at 345 (citing *Prindel v. Ravalli County, 331 Mont. 338, ¶ 45; Cusenbary v. Mortensen, 296 Mont 25, ¶ 39).*

Black Hills argues that it is not attempting to merely diminish its own responsibility in an attempt to apportion fault to a non-party which, as the supreme court in *Faulconbridge* reemphasized, is prohibited. Rather, the plain language of Black Hills' fourth and fifth affirmative defenses indicates that it will seek to introduce evidence of non-party conduct only to show that such conduct was a superseding, intervening cause of Jensen's injuries. This use of such evidence is consistent with the supreme court's above pronouncement from *Faulconbridge*. *Id*.

Jensen argues that Black Hills cannot assert superseding or intervening causation as a defense because Black Hills "set in motion events that resulted in injuries" to Jensen and thus Nabors' conduct could not be an unforeseeable intervening cause. The Court is inclined to agree. However, as already noted in the foregoing discussion directed at Black Hills' summary judgment motion, genuine issues of material fact exist about the cause of this accident. The Court concludes that reasonable minds could disagree about this. Resolution of those

18

factual disputes is best left to a jury which will hear the evidence about the circumstances of this accident.  If the evidence at trial does not support the defenses, appropriate motions can be presented at that time.  Summary judgment, therefore, is not appropriate.

### C.   *Black Hills' Motion for Leave to File Response to Supplemental Authority in Support of Jensen's Motion for Partial Summary Judgment*

The Court has considered Jensen's submission of supplemental authority, Black Hills' motion for leave to file a response to the submission, and the parties' other related briefs.  Having done so, and in light of the foregoing conclusion with respect to Jensen's motion for partial summary judgment, the Court concludes that additional briefing on the issue is unnecessary at this time.  Thus, the Court will deny Black Hills' motion for leave to file a response.

### D.   *Black Hills' Motion to Amend Answer to Add a § 27-1-703 Defense*

Black Hills seeks to amend its Answer to add a § 27-1-703, MCA, defense. Following Halliburton's recent settlement with Jensen, Black Hills seeks to add an affirmative defense in which it alleges that Halliburton negligently caused, in full or in part, Jensen's injuries.  *Deft Black Hills' Br. in Support of Mtn. to Amend Answer to Add a § 27-1-703 Defense* (Court's Doc. No. 138) ("*Black Hills' Br.*")

*at Ex. A* (*Black Hills' Proposed Amended Answer and Jury Demand*).

Black Hills argues that it should be permitted to amend its answer for two primary reasons.  First, Black Hills argues that Montana's comparative fault statute, § 27-1-703, MCA, requires a jury seated in a negligence case to consider the negligence of those persons who the plaintiff has released from liability or with whom the plaintiff has settled.  *Id. at 1-2*.  According to Black Hills, as long as a defendant complies with the statute, it may amend its answer as a matter of right.

Black Hills argues that it has complied with the statute because: (1) it has made its motion with "reasonable promptness" in that Jensen only recently settled his case against Halliburton; (2) Halliburton has ample opportunity to intervene in the case and defend itself; and (3) Halliburton has been aware of this action since its inception and has participated in all phases of discovery.  *Id. at 4-5*.  Thus, Black Hills argues, it should be permitted to amend its answer to add a § 27-1-703, MCA, defense.

Second, Black Hills argues that its motion to amend is well-taken because Halliburton's alleged role in the accident has been universally known since the case began.  Black Hills argues that: (1) throughout this litigation, Jensen has

claimed, *inter alia*, that Halliburton was responsible for the accident, *id. at 2*

(citing *Pltf's Cmplt. at ¶¶ 16 and 17*); and (2) Jensen's own experts have opined

that Halliburton's conduct caused the accident, *id. at 3*.  Thus, Black Hills argues,

it should be permitted to put claims of Halliburton's liability before the jury.  *Id. at*

*2-3.*

    In response, Jensen raises five arguments.  *Plft's Resp. to Deft Black Hills'*

*Mtn. to Amend Answer* (Court's Doc. No. 141) ("*Jensen's Resp.*") at *1-2*.  He

argues that: (1) Black Hills has never before alleged that Halliburton was liable in

this case and, for it now to assert this defense, it should have disclosed that

position in discovery, *id. at 5-8*; (2) the time to amend pleadings and the close of

discovery have passed, *id. at 8-9*; (3) the rules of evidence do not permit Black

Hills from putting Halliburton's settlement with and release from Jensen before

the jury, *id. at 9*; (4) Black Hills' proposed Amended Answer contains affirmative

defenses 3 and 7, which Black Hills already has conceded have no merit, *id.*; and

(5) Black Hills' liability experts have never blamed Halliburton for the accident,

and Black Hills is now precluded from developing any evidence to support its

theory that Halliburton is liable for the accident, *id. at 9-10*.

    In reply, Black Hills argues that: (1) the plain language of § 27-1-703,

MCA, clearly allows it to add the defense at issue, *Black Hills' Reply Br.* (Court's

Doc. No. 143) ("*Black Hills' Reply*") *at 2–4*; (2) it has made its request to add a §

27-1-703 defense with the requisite "reasonable promptness," *id. at 3-4*; (3) its

"empty chair" defense is not based on its prior pleading and discovery responses,

and the statute does not require any sort of "pre-pleading," *id. at 4-6*; (4) addition

of this defense will require no further discovery and evidentiary support for the

defense will not come from Black Hills' witnesses but from Jensen's own

witnesses and experts, *id. at 4, 8-9*; and (5) Jensen will suffer no unfair prejudice

if Black Hills is allow to assert the subject defense, *id. at 10*.

The Court concludes that it is appropriate to grant Black Hills' motion.

Section 27-1-703, MCA, allows comparison of the negligence of non-parties, such

as Halliburton, who have settled with and been released by plaintiffs. "The

Legislature intends that the liability of persons who settle or are released and who

may share in the responsibility for a tort cause of action be considered by the trier

of fact and apportioned a percentage of damages according to their negligence[.]"

Ch. 293, L. 1997 (preamble). The Legislature intended to preserve percentage

apportionment of liability to released non-parties while correcting the

constitutional deficiencies previously identified by the Montana Supreme Court.

Section 27-1-703's express language states that the fact finder may consider

the fault of persons released by a plaintiff. "The liability of persons released from

22

liability by the claimant and persons with whom the claimant has settled must also be considered by the trier of fact, as provided in subsection (6)." § 27-1-703 (4), MCA.  Subsection (6) states in relevant part:

> (a) [A] defendant may assert as a defense that the damages of the claimant where caused in full or in part by a person with whom the claimant has settled or who the claimant has released from liability
>
> \*      \*      \*
>
> (d) A release of settlement entered into by a claimant constitutes an assumption of the liability, if any, allocated to the settled or released person.  The claim of the releasing or settling claimant against other persons is reduced by the percentage of the released or settled person's equitable share of the obligation, as determined under subsection (4).

§ 27-1-703 (6), MCA.

The statute places the burden of proof for the non-party's negligence upon the defendant pleading the defense, and sets forth procedural requirements to provide notice and an opportunity to intervene and defend to the non-party whose negligence the defendant asserts as a defense.  *See* § 27-1-703 (6)(e)-(g). According to the statute, Jensen assumes Halliburton's liability for purposes of negligence comparison because Jensen settled with and released Halliburton.  The

issue of Halliburton's negligence is a defense to Jensen's claims against Black Hills, not an affirmative claim for damages by Black Hills against Halliburton.

In concluding that it is appropriate to allow Black Hills to amend its Answer, the Court is not persuaded by Jensen's arguments for the following reasons. First, the statute does not require that Black Hills previously alleged Halliburton's fault in the accident. It cannot reasonably be disputed that Jensen has claimed from the inception of this action that Halliburton was liable and that Halliburton was aware of Jensen's claims against it.

Second, Black Hills has sought leave to amend with "reasonable promptness" under the statute. § 27-1-703 (6)(f), MCA. It only recently became aware that Jensen settled with Halliburton.

Finally, Black Hills' previous concession that its third and seventh affirmative defenses should be dismissed, and later inclusion of them in its proposed Amended Answer, is not a sufficient basis to deny its motion to amend. As discussed *supra*, summary judgment should be granted with respect to those affirmative defenses. The affirmative defense regarding Halliburton is stated in the ninth affirmative defense of the proposed Amended Answer.

*IV*.   **CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that Black Hills' Motion for Leave to File Response to Supplemental Authority in Support of Jensen's Motion for Partial Summary Judgment (*Court's Doc. No. 134*) is DENIED.

**IT IS FURTHER ORDERED** that Black Hills' Motion to Amend Answer to Add a § 27-1-703 Defense (*Court's Doc. No. 137*) is GRANTED, except as to the third and seventh affirmative defenses stated in the proposed Amended Answer.

**IT IS RECOMMENDED** that Jensen's Motion for Partial Summary Judgment (*Court's Doc. No. 83*) be GRANTED to the extent it seeks summary judgment on Black Hills' third and seventh affirmative defenses, and DENIED to the extent it seeks summary judgment on Black Hills' fourth and fifth affirmative defenses.

**IT IS FURTHER RECOMMENDED** that Black Hills' Motion for Summary Judgment (*Court's Doc. No. 103*) be DENIED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Order and Findings and Recommendations of the United States Magistrate

Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636,

any objections to the findings and recommendation portion must be filed with the

Clerk of Court and copies served on opposing counsel within ten (10) days after

receipt hereof, or objection is waived.

DATED this 17th day of December, 2008.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge

26